UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EVELYN E.,

                          Plaintiff,

        v.

NANCY BERRYHILL, Deputy Commissioner
of Social Security for Operations,

                          Defendant.

Case No. 2:17-cv-01924-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for **October 19, 2018**

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Plaintiff seeks reversal of the ALJ's decision and requests that the Court remand for further administrative proceedings.

Plaintiff contends that the ALJ misapplied the law and lacked substantial evidence for his decision to deny benefits. Specifically, she argues that the ALJ erred by discounting plaintiff's reports of severe limitations due to mental health issues, pain, and other symptoms and by failing to properly assess evidence of physical and mental limitations, including the opinion of her treating physician and two examining psychologists. Plaintiff does not request that the Court remand with directions to award benefits, nor does she brief such an argument under the credit-as-true rule. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). The undersigned agrees

REPORT AND RECOMMENDATION - 1

that the ALJ erred and recommends that the ALJ's decision be reversed and remanded for further administrative proceedings.

## I.  BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on June 10, 2014, alleging that her disability onset date was May 16, 2014. Dkt. 12, Administrative Record (AR) 24. That claim was denied initially and on reconsideration. *Id.*

A hearing was held before an administrative law judge (ALJ) on August 24, 2016. AR 249-309. Plaintiff, her daughter, and a vocational expert appeared and testified. *Id.*

The ALJ determined that plaintiff suffers from the following severe impairments: "degenerative disc disease; hypertension; status post crush injury (non-fracture) to the lower right extremity; anxiety disorder; mood disorder." AR 27. The ALJ decided that even with the impairments and symptoms that were reflected in the medical records and in testimony, plaintiff could perform certain types of "light work," including jobs as a grain picker, storage facility rental clerk, furniture rental clerk, sorter, and mail clerk, that exist in significant numbers in the national economy. AR 35-36. The ALJ therefore found that plaintiff was not disabled. AR 24-36. The Appeals Council denied plaintiff's request for review on December 6, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed that decision in a complaint filed with this Court on January 5, 2018. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

## II.  STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

REPORT AND RECOMMENDATION - 2

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have Residual Functional Capacity (RFC), and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Revels,* 874

REPORT AND RECOMMENDATION - 3

F.3d at 654. The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

### III.  THE ALJ'S CONSIDERATION OF PLAINTIFF'S TESTIMONY

Plaintiff asserts that the ALJ erred in evaluating her subjective symptom testimony because the ALJ failed to give clear and convincing reasons to reject that testimony. The undersigned agrees.

Questions of credibility[1] are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

In weighing a plaintiff's testimony, an ALJ must use in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v.*

---

[1] Since the ALJ's ruling in this case, the Social Security Administration issued a ruling to "'eliminat[e] the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term' and to 'clarify that subjective symptom evaluation is not an examination of an individual's character' but instead was meant to be consistent with 'our regulatory language regarding symptom evaluation.'" *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (quoting SSR 16–3p (2016)). As the Ninth Circuit explained, the new

> ruling makes clear what our precedent already required: that assessments of an individual's
> testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the
> ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably
> be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the
> claimant's character and apparent truthfulness.

*Id.* (emphasis added).

REPORT AND RECOMMENDATION - 4

*Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, plaintiff testified to the following symptoms and limitations: She can no longer perform her previous jobs as a certified nursing assistant and medical technician because her back pain prevents her from "being able to stand or sit for a long period of time." AR 259. She has radiating pain starting from her lower back and going down her leg. AR 265. She has tingling and numbness in her feet. AR 265. She has fallen "a couple of times" when her "legs gave out." AR 260. She can only sit or stand for 20 minutes at a time. AR 259, 266. After walking, she has to lay down for 20 to 30 minutes. AR 266. An old shoulder injury still gives her pain, which radiates down her arm and affects her hands. AR 267. Her shoulder prevents her from "do[ing] a lot of pushing and pulling." AR 273.

Plaintiff testified that she has received extensive treatment for her back pain, including "three versions of the depo shot," "electrolytes injections," and physical therapy. AR 264. She stated that injections give her relief for "a couple of days," "but then after that it went back to normal." AR 264-65. She stated that she takes methadone every eight hours and oxycodone every four, and that she experiences side effects including fatigue, drowsiness, and nausea, which make her need to lie down. AR 265.

REPORT AND RECOMMENDATION - 5

1  She testified that her daughter worked 41 hours per week helping her, cooking, preparing

2  meals, giving her medication reminders, helping her get in and out of the bath, and helping her

3  with her hair because "I can't move my arms over my shoulder any more." AR 260-62.

4  With respect to plaintiff's mental-health symptoms, plaintiff testified that she receives

5  counseling for depression and post-traumatic stress disorder (PTSD). AR 267-69. She testified

6  that her depression has worsened because of domestic violence in her past, and that she has

7  nightmares and flashbacks. AR 269. She testified that she "very often" hears voices of deceased

8  relatives and converses with them. AR 267-68. She testified that she has trouble leaving her

9  house because of anxiety and cannot go to the grocery store alone. AR 270-71. She also testified

10  that she has a heart problem that gives her palpitations and chest pains. AR 273. She stated that

11  drowsiness and fatigue give her trouble focusing AR 265, 274, 529.

12  Plaintiff testified that in a typical day, "I sit and watch TV and lay down most of the

13  time." AR 272-73.

14  The ALJ discounted plaintiff's testimony, finding "[t]he updated medical evidence does

15  not fully support the allegations." AR 31-32. None of the ALJ's reasons for discounting

16  plaintiff's testimony are clear and convincing, however.

17  Addressing plaintiff's mental impairments, the ALJ found that observations in the

18  treatment record that plaintiff presented as alert, oriented, and not in acute distress conflict with

19  allegations of auditory hallucinations. AR 31. The Commissioner asserts that the Court should

20  uphold this finding because, with respect to plaintiff's mental health, her "subjective allegations

21  were contradicted by the objective medical record." Dkt. 15, p. 2.

22  The ALJ's explanation fails for three reasons:

REPORT AND RECOMMENDATION - 6

First, this would not be a sufficient reason, standing alone, to discount plaintiff's symptom testimony. Medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p (superseded by SSR 16-3p, after the ALJ decision in this case). But an ALJ may not rely solely on a lack of objective medical evidence to reject a claimant's subjective symptom testimony. *Id.*

Second, the ALJ's decision does not show that he actually concluded that, as the Commissioner asserts, plaintiff's "subjective allegations were contradicted by the objective medical record." AR 31-32; Dkt. 15, p. 2. The ALJ's discussion of plaintiff's testimony about her mental impairments includes just one finding: that certain findings in the "psychiatric" and "neurologic" portions of plaintiff's treatment notes "conflict[ ] with the claimant's allegations that she has auditory hallucinations." AR 31; *see* AR 792, 1100, 1106, 1139, 1143, 1145, 1149, 1359. Substantial evidence does not support this inference. The ALJ did not explain, and the record does not show, how plaintiff's alert appearance, orientation to her identity, time, and place, and lack of acute distress are inconsistent with her reports of having auditory hallucinations.

Moreover, plaintiff reported mental symptoms other than auditory hallucinations, including depression, nightmares and flashbacks, anxiety that prevents her from leaving the house, and difficulty focusing. AR 267-71, 273-74, 529. The ALJ cited nothing in the medical record that conflicted with these symptoms. The single occasion he points to, when plaintiff denied feeling anxious or depressed, is not "objective" evidence as the ALJ implied. *See* AR 790. Nor can it support an inference that plaintiff's testimony and other reports were therefore unreliable. *See, e.g.*, AR 267-71, 273-74, 529, 851, 857; *see also Ghanim v. Colvin*, 763 F.3d

1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record).

The remainder of the ALJ's analysis of plaintiff's mental-health testimony consists of a summary of findings by an examining psychologist, Dr. Quinci. AR 31. The ALJ draws no conclusions from these findings, and his logic in summarizing them cannot be "reasonably discerned." *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (Court must uphold unclear ALJ decision "if the agency's path may reasonably be discerned.").

Accordingly, the ALJ gave inadequate reasons for rejecting plaintiff's testimony about her mental-health symptoms.

Addressing plaintiff's physical-impairment testimony, the ALJ again summarized plaintiff's medical records without offering any interpretation or explaining how those records justify discounting plaintiff's testimony. AR 31-32. The ALJ's analysis is neither clear nor convincing. *See Smolen*, 80 F.3d at 1281-82.

Finally, the ALJ found "several other inconsistencies" between plaintiff's testimony and her activities as well as other items in the record. AR 32. An ALJ can discount a claimant's testimony based on her daily activities on two grounds. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id.* Here, the ALJ lists no daily activities that would indicate plaintiff is more functional than she has alleged. Although the ALJ found that plaintiff "does puzzles for a hobby,

which suggests that she is able to consistently perform at least simple, routine tasks," the record contains no indication that plaintiff does puzzles for a "substantial part" of her day or that the activity is "transferable to a work setting." AR 32; *see Smolen*, 80 F.3d at 1284 n.7.

Under the second ground, a claimant's activities of daily living can "contradict his other testimony." *Orn*, 495 F.3d at 639. Here, the ALJ infers from a single note—"hard to go anyplace, but friends do get her to go out"—that "while the evidence demonstrates that the claimant has severe impairments, she is nonetheless able to work through them." AR 32, 1084. The single, ambiguous note the ALJ cites cannot reasonably support such a sweeping conclusion about plaintiff's abilities. *See Trevizo*, 871 F.3d at 674 (explaining "substantial evidence" standard).

The ALJ also found that plaintiff's testimony was undermined by a treating physician's recommendations that she become more active and "try to wean off the narcotic medications," AR 1251, and notes that plaintiff was not in "any apparent or acute distress," AR 1198, 1240, 1244, 1250. AR 32. The ALJ did not explain how a doctor's recommendation that plaintiff exercise is inconsistent with her testimony about her specific limitations. Nor does the record support an inference that plaintiff failed to follow treatment recommendations about narcotic medications. Finally, a lack of apparent or acute distress at treatment visits is not a clear and convincing reason to reject plaintiff's testimony about pain.

The ALJ thus failed to give clear and convincing reasons to discount plaintiff's testimony about both mental and physical symptoms. Accordingly, the Court should reverse the ALJ's decision.

## IV.  MEDICAL OPINION EVIDENCE

Plaintiff also contends that the ALJ erred in discounting three doctors' opinions. The undersigned agrees.

REPORT AND RECOMMENDATION - 9

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If the treating opinion is uncontradicted, an ALJ must provide clear and convincing reasons to reject it. *Id.* The ALJ must support his or her decision to reject the treating physician's opinion with "specific, cogent reasons." *Id.* On the other hand, when other evidence contradicts a treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Revels*, 874 F.3d at 654. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The regulations require the ALJ evaluate any medical opinion based on a number of factors, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency and; 5) specialization. *See* 20 C.F.R. § 404.1527(c). More weight is given to opinions from treating sources, sources who have examined the claimant a number of times, and sources who have greater knowledge about the claimant's medical impairments. *See* 20 C.F.R. § 404.1527(c)(2)(i); *Trevizo*, 871 F.3d at 676 ("[T]he ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited.").

A.    Treating Physician: Ignatius Medani, M.D.

Dr. Medani was plaintiff's treating physician for over three years. AR 821-1076, 1184-1351. The parties dispute whether Dr. Medani was the person who completed a form contained in the record, dated June 6, 2014. *See* AR 829-33. The ALJ explained:

> Very little weight is given to the check-box form dated June 2014, because whomever completed it crossed-out their name, as well as in [sic] initial finding that the claimant can perform sedentary work-related tasks. (B10F/10-11). While handwritten comments are listed on page 1 of this form, they are largely illegible. (B10F/9). There is nothing on the face of this form to support adding limitations to the RFC based on "auditory hallucinations," which is legible in section 2. (B10F/9). The inference from this check-box form is what [sic] whomever completed it was unsure about the claimant's functional abilities in June 2014.

AR 34. The ALJ thus did not address the opinions contained in the form, but rejected the form based on two factual findings: the signature was crossed out, and much of the writing on the form was illegible.

The record lacks substantial evidence to support the ALJ's findings.

First, the ALJ's finding that "whomever completed [the form] crossed-out their name" was not reasonable. AR 34. The form opinion was included in the record among over 400 pages of treatment records from Sound Interval Medicine. AR 821-1076, 1184-1351. Most of these records contain a signature identical to that on the form opinion, on records otherwise indicating that they were completed by Ignatius C. Medani, M.D. *See, e.g.*, AR 827, 835, 847, 855, 862, 874. The records contain several documents with Dr. Medani's name typewritten on the bottom, and a signature that is illegible but does not appear to be the signature of any other person besides Dr. Medani. (Although the Commissioner asserts that Medani initialed his cross-outs, no such initials are apparent. *See id.*; Dkt. 15, pp. 5-6.)

An ALJ may choose among rational interpretations of conflicts and ambiguities in the record. *Revels,* 874 F.3d at 654. Here, however, there is no evidence from which the ALJ could reasonably infer that Dr. Medani went back through every treatment note and scribbled out his

REPORT AND RECOMMENDATION - 11

signature, in an identical fashion, to indicate that he disavowed those notes. As noted above, the notes included not only the form opinion but over 400 pages of routine treatment notes. *See* AR 821-1076, 1184-1351. The Commissioner and ALJ offer no theory of why Dr. Medani would want to disavow these in addition to his medical opinion on the disputed form, or why he would choose to do so in such a laborious way. The ALJ's action—rejecting Dr. Medani's opinion based on an unreasonable inference about his signature—does not comply with the requirement that the ALJ give a treating physician's opinion "controlling weight" unless the ALJ performs a required analysis. *See Trevizo*, 871 F.3d at 676 (citing 20 C.F.R. § 404.1527(c)(2)).

At most, the record presents a perceived ambiguity. If the ALJ had serious doubts about authenticity, accuracy, or content of the documents, the appropriate course of action would have been to contact Dr. Medani and take steps to resolve the evidentiary concerns. An ALJ has a duty to further develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). For example, this Court has found that, where a treating doctor's notes were indecipherable and illegible, the ALJ had a duty to re-contact the physician to determine whether a plaintiff's fibromyalgia was a medically determinable impairment. *See Williams v. Colvin*, 2015 WL 7018724, at *3-4 (W.D. Wash. Nov. 10, 2015).

Here, the ALJ found an ambiguity in the form opinion with respect to both the author's signature and the contents of the illegible writing. In the context of the record as a whole, it may reasonably be concluded that the form was an opinion offered by plaintiff's longtime treating physician. *See* AR 821-1022. In this situation, the ALJ had a duty to re-contact the treating physician to resolve these ambiguities.

REPORT AND RECOMMENDATION - 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In addition, the undersigned would point out that the ALJ indicated he had no idea who completed the form, AR 34, and did not refer to Dr. Medani's evaluation of the plaintiff in the ALJ decision; thus it appears that the ALJ did not give due consideration to the over 400 pages of treatment notes signed by Dr. Medani in an identical way. *See* AR 821-1076, 1184-1351; *Magallanes*, 881 F.2d at 755 (Court may draw "specific and legitimate inferences from the ALJ's opinion"). The ALJ's apparent failure to consider a large portion of the record compiled by plaintiff's treating physician would by itself warrant remand. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records . . .").

The ALJ's rejection of the entire form opinion because some of it was illegible was a finding that is unsupported by the record. The form is indeed partly illegible. *See* AR 829-31. But there are legible portions that indicate plaintiff had "severe lumbo/sacral disc disease" and experienced auditory hallucinations and depression due to multiple medical conditions. AR 829.

The author opined that plaintiff's physical, mental, emotional or developmental condition limited her ability to work, look for work, or prepare for work, because she is "unable to stand/sit" and has problems focusing and a lack of motivation. AR 829. The author opined that plaintiff was capable of sedentary work and that these limitations would last for twelve months. AR 830. The author recommended intensive mental health treatment. AR 830.

In light of the evidence that Dr. Medani completed and signed the form (even if the signature is a unique one), the ALJ failed to give adequate consideration to Dr. Medani's opinion. The ALJ's written decision does not address the factors the ALJ was required to consider in weighing the opinion of Dr. Medani, plaintiff's treating physician. Remand is

REPORT AND RECOMMENDATION - 13

warranted on this basis, as well. *See Trevizo*, 871 F.3d at 676 (noting "[t]his failure alone constitutes reversible legal error").

B.    Examining Psychologist: Charles Quinci, Psy.D.

Dr. Quinci performed a psychological evaluation of plaintiff in August 2014. AR 813-16. Dr. Quinci performed reviewed plaintiff's history and performed a clinical interview and mental status examination. He found that plaintiff showed symptoms of depression and anxiety and diagnosed her with "Major Depression – marked (R/O psychotic features)," "Anxiety [disorder]-moderate," and PTSD. AR 814. In the mental status examination, Dr. Quinci noted that plaintiff's mood was depressed and her affect restricted. AR 816. He found that plaintiff had moderate impairments in remote memory and concentration. *Id.* He found that plaintiff had a mildly impaired fund of knowledge, "moderate+" impairment in abstract thought, and some impairment in judgment and insight. *Id.*

Dr. Quinci opined that plaintiff had marked limitations in her ability to perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 815. He opined that she also had marked limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* And he opined that plaintiff would have moderate limitations in learning new tasks, performing routine tasks without special supervision, and setting realistic goals and planning independently. *Id.*

The ALJ gave Dr. Quinci's opinion little weight. AR 33. He explained that Dr. Quinci based his opinion "on a single exam and the claimant's subjective symptoms." AR 33. As evidence, he pointed to Dr. Quinci's note that he did not review any records, AR 813. The ALJ concluded from this that Dr. Quinci relied on plaintiff's symptoms, which the ALJ found

REPORT AND RECOMMENDATION - 14

"problematic" because the ALJ had discounted those symptoms. The ALJ further discounted Dr. Quinci's opinion because he found that Dr. Quinci "did not adequately reconcile his own test results with the assigned GAF score(s) and check-box limitations" in his opinion. AR 33. The ALJ also noted that he accounted for impairments to plaintiff's insight and judgment in the RFC. *Id.*

These were not specific and legitimate reasons to discount Dr. Quinci's opinion.

First, the fact that Dr. Quinci only examined plaintiff once was one factor that the ALJ was required to consider. 20 C.F.R. § 404.1527(c)(2)(i). But this factor alone was not sufficient to justify rejecting Dr. Quinci's opinion, as the ALJ gave "[s]ignificant weight" to the opinions of two reviewing psychologists who did not examine plaintiff at all. AR 32; *see* AR 330, 375.

Second, the ALJ's statement that Dr. Quinci based his opinion on plaintiff's subjective complaints is neither supported nor legitimate. The ALJ's decision apparently ignored both the "nature" of psychology, which always depends in part on a patient's self-reports combined with the examiner's expert observations, and the objective component of the mental-status examination. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Like the ALJ in *Buck v. Berryhill*, the ALJ erred in relying on the "'relative imprecision of the psychiatric methodology'" to reject an examining source's opinion. 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

Finally, even if the undersigned had found support for ALJ's finding Dr. Quinci relied primarily on plaintiff's subjective statements, this would not constitute a legitimate reason to reject Dr. Quinci's opinion because, as discussed above, the ALJ erred in discounting those subjective statements. *See Ghanim*, 763 F.3d at 1162.

Accordingly, the ALJ erred in rejecting Dr. Quinci's opinion, as well.

REPORT AND RECOMMENDATION - 15

C.    <u>Examining Psychologist: William Wilkinson, Ed.D.</u>

Dr. Wilkinson performed a psychological evaluation of plaintiff in April 2016, AR 1164-70, and diagnosed plaintiff with PTSD and major depression. AR 1166. Like Dr. Quinci, Dr. Wilkinson reviewed plaintiff's medical history and performed a clinical interview and mental status examination. AR 1164-70. Like Dr. Quinci, he did not review any medical records. AR 1164.

Dr. Wilkinson observed that plaintiff "appeared tired" and found that her mood went "back and forth between okay and the depression, anxiety." AR 1168. He noted that her affect also had a "tendency to be flat and down." *Id.* He found that plaintiff's remote memory was fair but her recent memory was poor, and that she was "challenged and slow at immediate memory MSE tasks." *Id.* He further found that plaintiff "had much difficulty with concentration MSE tasks." *Id.*

He found, like Dr. Quinci, that plaintiff would have marked limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision. AR 1166. He further found that plaintiff would have marked limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* And he opined that plaintiff would have moderate limitations in learning new tasks and performing routine tasks without special supervision, as well as in several other areas. *Id.*

The ALJ gave "little weight" to Dr. Wilkinson's opinion because he also "did not consider any independent evidence." AR 33. The ALJ also discounted Dr. Wilkinson's opinion because he found Dr. Wilkinson to be "tentative, i.e., in evaluating the claimant's thought processes and content and his perception he reported, might need further assessment." *Id.*; *see*

AR 1168. The ALJ added, "[t]his uncertainty may be due to Dr. Wilkinson having relied more on what the claimant told him instead of what the objective testing actually showed." AR 33.

This analysis was flawed in several ways. Like Dr. Quinci, Dr. Wilkinson conducted a clinical interview, reviewed plaintiff's history, and performed a mental status examination. In that exam, he noted abnormalities in plaintiff's appearance, mood and affect, memory, and concentration. AR 1168. Accordingly, the ALJ's finding that Dr. Wilkinson "did not consider any independent evidence" is unsupported. AR 33; *see Buck*, 869 F.3d at 1049. Moreover, Dr. Wilkinson's failure to review medical records—while a factor to consider in weighing his examining opinion—would not by itself justify rejecting that opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Buck*, 869 F.3d at 1049 ("Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry.")).

Likewise, the record lacks substantial evidence for the ALJ's finding that Dr. Wilkinson's opinion was "tentative." Dr. Wilkinson wrote "might need further assessment" and "needs further assessment" next to two categories: thought process and content, and memory. AR 1168. He marked both these categories as "within normal limits." *Id.* (memory was marked *both* "Yes" and "No"). Dr. Wilkinson did not indicate such uncertainty with respect to findings in categories where he found plaintiff's ability to *not* be "within normal limits." AR 1168 (mood, affect, memory, concentration). The purported tentativeness would thus weigh toward plaintiff being *more* disabled than Dr. Wilkinson opined, not less as the ALJ concluded.

Finally, the ALJ's statement that Dr. Wilkinson's "uncertainty may be due to Dr. Wilkinson having relied more on what the claimant told him instead of what the objective testing actually showed" appears to be sheer speculation. AR 33; *see Buck*, 869 F.3d at 1049 ("[T]he

REPORT AND RECOMMENDATION - 17

rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."). Further, the ALJ could not reject Dr. Wilkinson's opinion as based on unreliable self-reports by the plaintiff because, as discussed above, the ALJ erred in finding those reports unreliable.

Because the ALJ erred in rejecting the opinions of plaintiff's treating physician and two examining psychologists, the Court should reverse the ALJ's decision and remand.

## V.   REMAND FOR FURTHER PROCEEDINGS

Plaintiff does not specifically argue whether this case should be remanded for an award of benefits, or in the alternative, remanded for further administrative proceedings. Dkt. 10, 12. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels,* 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court

REPORT AND RECOMMENDATION - 18

concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting plaintiff's testimony about her limitations and severity of symptoms, and for discounting medical opinion evidence from three sources. Issues remain regarding the evidence in the record concerning plaintiff's functional limitations. Accordingly, the Court should find that remand for further consideration of those issues is warranted. Specifically, the Court should direct the Commissioner to re-evaluate plaintiff's testimony, plaintiff's daughter's testimony, and the medical evidence, including any additional relevant medical evidence that plaintiff or the ALJ submits.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ may also "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The undersigned notes that plaintiff's daughter testified at the hearing that she is plaintiff's full-time caregiver. AR 285. She testified that she has observed plaintiff's abilities deteriorate and her activities become more limited. AR 286-91. The ALJ gave this testimony "partial weight, because it shows that the claimant has severe mental and physical impairments," and stated that he considered the testimony in the RFC. The ALJ explained, however, that he

REPORT AND RECOMMENDATION - 19

discounted the daughter's testimony because "she does not appear to have reviewed any independent medical evidence prior to testifying." AR 33.

Ordinarily the Court will not consider matters "that are not specifically and distinctly argued" in a plaintiff's briefing. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.2008) (internal quotation marks and citation omitted). But the Court also has an independent duty to "determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks and citation omitted).

The ALJ committed an obvious error in rejecting lay testimony from plaintiff's daughter on the basis that the daughter "did not appear to have reviewed any independent medical evidence prior to testifying." AR 33. "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). There is no basis in the regulations to require a lay witness to review a claimant's medical history before offering her own testimony. Nor is there any conceivable reason to expect a lay witness to do so, as her testimony does not depend on medical evidence. *See id.* Thus, the ALJ's sole reason to discount plaintiff's daughter's testimony was not germane. *See Lewis*, 236 F.3d at 511. The Court should remand based on this error, as well.

## VI. <u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined plaintiff to be not disabled, and therefore that it reverse the ALJ's decision to deny benefits and remand for further administrative proceedings.

REPORT AND RECOMMENDATION - 20

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **October 19, 2018**, as noted in the caption.

Dated this 28th day of September, 2018.


Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21